UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

NICOLE PERRY,                          )
                                       )
    Plaintiff,                     )
v.                                     )          Civil Case No.
                                       )          2:12-cv-168-JMH
SOCIAL SECURITY                        )
ADMINISTRATION,                        )   **MEMORANDUM OPINION & ORDER**
                                       )
    Defendant.                     )
                                       )

\* \* \*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. [Tr. 10—21].[1]  The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion [D.E. 17] and grant Defendant's motion [D.E. 18].

**I.   OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

    1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2.   An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.   If the claimant is able to continue to do this previous work, then he is not disabled.

5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.   If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.*   "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process.   [Tr. 10—21].   He first determined

2

under step one that Plaintiff has not engaged in substantial gainful activity since April 24, 2002, the alleged onset date. [Tr. 12]. Next, the ALJ continued to step two and found that Plaintiff has two medically determinable severe impairments, including degenerative disc disease and chronic headaches. [Tr. 12].

After deciding that Plaintiff's impairments did not equal a listed impairment under step three, including Listing 1.04(A), which Plaintiff's attorney has continuously insisted that Plaintiff meets, the ALJ proceeded to step four and found that Plaintiff has a residual functional capacity ("RFC") to perform light work. [Tr. 17]. The ALJ concluded that she would be unable to perform her past relevant work as a waitress with this RFC; however, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in her condition. [Tr. 19—20]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 20—21].

In this appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence of record. Specifically, Plaintiff argues that the ALJ erred by 1) failing to hold that Plaintiff's

3

degenerative disc disease meets the criteria of Listing 1.04(A); 2) failing to incorporate a medical expert's modifications to his medical source statement that he made while giving testimony at the hearing; and 3) improperly discounting Plaintiff's credibility as to her statements regarding the intensity, persistence, and limiting effects of her symptoms. [D.E. 17]. The Court has considered arguments by Plaintiff and the Commissioner, as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II.  STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## III. FACTUAL AND PROCEDURAL BACKGROUND

At the time of her hearings, Plaintiff was a thirty-seven year old woman with an eleventh-grade education. [Tr. 664]. She has past work experience as a waitress. [Tr. 665]. Plaintiff filed for disability under Title II and Title XVI on April 8, 2008, alleging disability beginning April 24, 2002. [Tr. 10]. The claim was denied both initially and upon reconsideration. [Tr. 10]. Plaintiff requested a hearing with the ALJ, which took place on May 21, 2010. [Tr. 10; 606—67]. She received a second hearing on May 21, 2010. [Tr. 10; 30—87]. The ALJ issued an unfavorable decision denying disability on November 5, 2010. [Tr. 21]. Plaintiff now appeals to this Court. [D.E. 1].

According to Plaintiff, she began having problems with her back about twenty years ago when her son was born. [Tr. 636]. Plaintiff has also been involved in at least two car accidents in 2004 and 2008 (Tr. 451; 459], in which she claims she experienced significant deterioration.

Plaintiff has a well-documented history of degenerative disc disease, supported by several MRIs in the record. [Tr. 367; 362; 509; 566—68]. Although Plaintiff's

pain associated with her degenerative disc disease was primarily in her back and left leg for several years, she also began to experience pain in her right leg in April and May of 2010. [Tr. 571—84]. The most recent MRI, conducted in April 2010, showed that Plaintiff has a large extruded disc fragment at L5 resulting in severe central canal stenosis and a mechanism for at least a right S1 radiculopathy. [Tr. 567]. There was also discogenic and facet degeneration resulting in foraminal narrowing at L4-5 and L5-S1 that was greatest on the left at L5-S1 providing a mechanism for a left L5 radiculopathy. [Tr. 567].

Plaintiff visited her primary care physician, Dr. Leigh Gaines, regularly over the course of 2003-2010 (Tr. 413—61; 499—509; 540—68]. As late as January 26, 2010, Dr. Gaines noted that Plaintiff had normal strength in her lower extremities. [Tr. 500]. Dr. Gaines reported that Plaintiff had positive straight leg raises several times over the years, [Tr. 445, 543, 544, 443, 436], but also reported several times that Plaintiff had negative straight leg raises, including just months before her first hearing on January 26, 2010. [Tr. 500; 432; 434]. While Plaintiff has experienced limitations in her range of motion, sensory loss, and reflex loss, these limitations have not been consistently reported. [Tr. 387—88; 429; 432; 434; 500;

501; 503; 526; 579]. Further, no physician has ever opined that Plaintiff suffers from muscle atrophy in her lower extremities, and Plaintiff's counsel does not suggest otherwise.

Plaintiff also suffers from migraines. She first complained of them in 2006. [Tr. 423]. She reported to Dr. Gaines in January 2010 that she has one to two migraines a month. [Tr. 500]. She reported at the hearing, also in 2010, that she has "three, four, five – – four times a week, easy" lasting up to an entire day. [Tr. 78]. She takes Maxalt for her migraine pain. [Tr. 542].

Plaintiff received a consultative examination with Dr. Phillip Swedberg on August 8, 2008. [Tr. 386—89]. Upon examination, Dr. Swedberg concluded that Plaintiff is "capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects." [Tr. 388]. Further, he concluded that Plaintiff has "no difficulty reaching, grasping, and handling objects," has "no visual and or communication limitations," and had no "environmental limitations." [Tr. 389].

Dr. Gaines did not complete a residual functional capacity assessment for Plaintiff, but she did provide a letter for Plaintiff's file on May 20, 2010, which stated

that Plaintiff's medications have some "side effects that would impair her daytime functioning on a job." [Tr. 569]. She also concluded that "Ms. Perry obviously suffers from numerous medical problems that impair her ability to maintain employment." [Tr. 569]. Dr. Gaines never opined, in the letter or upon the Court's review of her medical records, that Plaintiff was completely incapable of working.

Finally, Dr. Chukwuemeka Ezike, the medical expert that testified at Plaintiff's October 2010 hearing, concluded in his medical source statement that Plaintiff is capable of lifting no more than twenty pounds occasionally and ten pounds frequently, sitting, standing or walking for about six hours each in an eight-hour workday, and is able to balance, kneel, crouch, crawl, stoop, and climb ramps and stairs occasionally, but cannot ever climb ladders, ropes and scaffolds. [Tr. 598—99].

Plaintiff has had the same boyfriend for over twenty years, who is also the father of her adolescent son. She reported that she goes to movies and goes out to eat with her son [Tr. 295], is able to prepare small meals [Tr. 296], goes grocery shopping and clothes shopping [297], goes to church [Tr. 298], and has a good relationship with her mother [Tr. 298]. In July 2009, Plaintiff told her

8

doctor that she was able to paint her bathroom and generally do things around the house. [Tr. 503]. She also told her doctor in 2007 that she attended all of her son's sporting events and helped her mother, who had cancer. [Tr. 418; 305]. Plaintiff has smoked about a half of a pack of cigarettes daily since at least 2003. [Tr. 557]. She claimed in 2009 and at her hearing in 2010 that she is trying to quit smoking. [Tr. 501; 75].

## IV. ANALYSIS

Plaintiff's first argument on appeal is that the ALJ erred by failing to conclude that Plaintiff's impairments meet or medically equal Listing 1.04(A), which involves musculoskeletal disorders of the spine. *See* 20 C.F.R. pt. 404, subpt. B, app. 1, § 1.04(A) (2013). In order to show that impairments meet a listing, a claimant "must satisfy all of the criteria," or establish that his impairments medically equal a listed impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)). The ALJ concluded that Listing 1.04 was not met because, although Plaintiff had sensory loss and positive straight leg tests, she did not have them consistently; because he did not believe she had any reflex or motor loss; and because all of the

9

medical sources advised that Plaintiff did not meet Listing 1.04(A).  [Tr. 17].  The Court agrees.

Listing 1.04(A) requires the following:

**1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

SOCIAL SECURITY, DISABILITY EVALUATION UNDER SOCIAL SECURITY, http://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_04 (last visited August 9, 2013).[1]  Plaintiff does have a history of degenerative disc disease, exhibited through her MRIs.  [Tr. 566, 367, 362]. Plaintiff's April 2010 MRI also revealed that she has a "mechanism for at least a right S1 radiculopathy" and foraminal narrowing at L4-5 and L5-SI that provides "a mechanism for a left L5 radiculpathy."  [Tr. 567].  All appear to be in agreement that this provides at least some evidence of nerve root compression, characterized by pain.

---

[1] In addition to nerve root compression, one can also meet Listing 1.04(A) with evidence of spinal arachnoiditis or lumbar spinal stenosis.  It appears undisputed that there is no evidence of either of these disorders in the record.

Further, although Plaintiff has had multiple negative straight leg tests, she has also had several positive straight leg tests of the years [Tr. 445, 543, 544, 443, 436], has experienced decreased range of motion at times [Tr. 542, 543][2], and has sometimes had sensory and reflex loss [Tr. 509, 543, 579].

However, no physician has ever reported that Plaintiff has suffered from motor loss, and it has been repeatedly reported that Plaintiff has good strength in her lower extremities. [Tr. 414; 501; 509]. Thus, Plaintiff fails to meet this element of Listing 1.04, a conclusion that concords with Dr. Ezike's expert opinion [Tr. 596], and is not contradicted by any other medical findings, including those of her treating physician. Accordingly, the ALJ committed no error by finding that Plaintiff fails to meet Listing 1.04.

Second, Plaintiff argues that the ALJ erred by failing to explain why he did not incorporate Dr. Ezike's modifications to his medical source statement that were, according to Plaintiff's counsel, made during his testimony. Specifically, when pressed by Plaintiff's

---

[2] Several of Plaintiff's medical records also report that she had good range of motion in her lower extremities on the days that she was examined. [Tr. 414, 415, 501, 503, 543].

counsel, Dr. Ezike testified that 1) there is no reason that Plaintiff cannot sit about six hours in a total day, which "would be about 20 minutes [standing] in an hour if you calculate it" [Tr. 44]; 2) her current MRI would not preclude Plaintiff from completing sedentary work [Tr. 42]; and 3) it is possible that when Plaintiff goes to the emergency room on a day that her pain is a ten on a zero to ten pain scale, "she may have difficulty going to work." [Tr. 44].

Regarding Plaintiff's first argument, the Court cannot see how Dr. Ezike's testimony at the hearing significantly differs from his medical source statement. Consistently with his medical source statement, in which he noted that Plaintiff "may need sit/stand option if she has back pain exacerbation," he testified at the hearing that she would benefit from a job where she could sit or stand based off of how much pain she is in on a particular day, since he expects her symptoms to "wax and wane." [Tr. 43; 599]. When Plaintiff's counsel asked Dr. Ezike the amount of "total sitting" that Plaintiff would be able to do in a day's time, Dr. Ezike answered that there "is no reason why she cannot sit about six hours in a day total," also consistent with his medical source statement. [Tr. 44, 599]. When pressed further about an *exact* amount per hour

12

Plaintiff could sit, Dr. Ezike stated "[t]hat would be – – that would be about 20 minutes (standing) an hour if you calculate it" versus forty minutes sitting.   [Tr. 44]. Upon the Court's calculation this number is slightly off, since sitting forty minutes every hour in an eight hour workday only works out to sitting roughly five and one-third hours.   However, because the context of the questioning indicates that this was only a rough estimate, and because Dr. Ezike still maintained his opinion that she could sit for six hours in a workday, the Court finds no error with the ALJ's refusal to adopt this exact limitation.

Plaintiff's second argument – that the ALJ erred by not adopting Dr. Ezike's opinion that Plaintiff may be limited to sedentary work given the latest MRI – also fails, because the ALJ *did* incorporate this limitation into his analysis.   It is true that the ALJ stated that Plaintiff has an RFC such that she is capable of "light work."   [Tr. 17].   However, in his question to the vocational expert at the October hearing, he clearly incorporated Dr. Ezike's limitation with regard to giving Plaintiff an option to sit and stand into his hypothetical question, and the vocational expert told him that this would limit Plaintiff to sedentary jobs like those in

13

assembly, clerking, and inspection. [Tr. 83].
Accordingly, in the ALJ's opinion, he noted that "the
claimant's ability to perform all or substantially all of
the requirements of this level of work has been impeded by
additional limitations." [Tr. 20]. He therefore stated
that the jobs available to Plaintiff in the national
economy would be the sedentary jobs quoted by the
vocational expert, such as those in assembly, clerking and
inspection. [Tr. 20]. Thus, because the ALJ essentially
incorporated Dr. Ezike's opinion that Plaintiff would be
limited to sedentary work into his overall opinion, the
fact that he said that Plaintiff was capable of light work
in the RFC is, if anything, harmless error.[3]

Finally, Plaintiff takes issue with the fact that the
ALJ did not incorporate what she frames as an additional
limitation stated by Dr. Ezike at the hearing regarding
Plaintiff's potential absences from work. Specifically,
Plaintiff's counsel asked Dr. Ezike if, since Plaintiff's

---

[3] To the extent that Plaintiff also contests the ALJ's
failure to incorporate into the RFC that Plaintiff must
have a "sit/stand option," the same analysis applies.
Although it is true that the ALJ did not state in the RFC
that Plaintiff must have a sit/stand option, he included
this fact in his hypothetical to the vocational expert, and
limited the job categories for available work options for
Plaintiff to those that only required sedentary work and
that would allow Plaintiff to sit or stand on an as-needed
basis.

symptoms would wax and wane, there would likely "be days that her pain would be so severe, she would have trouble making it to work." [Tr. 44]. Dr. Ezike responded that it would be possible that if her pain was a ten on a zero to ten pain scale on a particular day, such as when she visited the emergency room, she may have difficulty going to work. [Tr. 44]. Plaintiff testified during the hearing that although her pain can reach a ten, it is, on average, a seven, with four to five bad days a week. [Tr. 54—55].

What Plaintiff ignores when making this argument is that the ALJ, as this Court concludes below, appropriately discounted Plaintiff's credibility with regard to the intensity, persistence, and limiting effects of her symptoms. If the ALJ had found credible Plaintiff's testimony that she frequently experienced pain at a level ten, then perhaps it would have been legal error for him not to incorporate this opinion from the medical expert into his opinion. However, the adverse credibility finding meant that the ALJ was relieved of his duty to incorporate this medical opinion into his residual functional capacity assessment, as the ALJ was not of the informed belief that Plaintiff experiences this type of pain as often as she claims. The Court finds no error.

15

This leads to Plaintiff's final argument, in which she argues that the ALJ improperly discounted Plaintiff's credibility as to her statements regarding the intensity, persistence, and limiting effects of her symptoms. While an ALJ must consider a plaintiff's statements about her pain when determining whether she is disabled, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Comm'r. of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citing *Walters*, 127 F.3d at 531). In this case, the ALJ's reasons for discounting Plaintiff's credibility were supported by substantial evidence in the record; therefore, deference to his decision is appropriate.

First, the ALJ considered the fact that Plaintiff's testimony appeared to be exaggerated when compared to her contemporaneous statements to physicians. For example, the ALJ pointed out that although Plaintiff stated in her functional report that she had to lay on the couch most of

16

the time, and stated at her hearing that she has had "daily pain" since 2002 [Tr. 62], she reported to her doctor that she was fairly active in 2005, followed a fairly normal routine in 2007, attended her teenage son's sporting events and helped her mother who had cancer in 2007, and could function fairly well in 2009, demonstrated by her ability to paint her bathroom and generally do things around her house. [Tr. 418, 429, 503]. The ALJ also pointed out that although Plaintiff testified that she had been falling frequently for about ten years, she told Dr. Swedburg in 2008 that she had never fallen. [Tr. 48, 386]. Plaintiff also denied falling to her emergency room doctors in April 2010. [Tr. 584].

In response, Plaintiff argues that the ALJ should not have relied on statements that she made to physicians during office visits, since "miscommunications can easily occur." [D.E. 17 at 19]. Plaintiff also argues that the ALJ took her statements from her 2008 Function Report out of context. Specifically, she takes issue with the fact that the ALJ cited Plaintiff's stated inability to walk to the restroom by herself, and concluded that this contradicted her testimony that she cared for her mother and attended her son's sporting events. [Tr. 18; 295]. Plaintiff points out that she only stated that she could

17

not walk without assistance to the bathroom during her menstrual cycle, not at all times. [Tr. 295]. Thus, she contends that it is unfair that the ALJ used this fact against her.

However, an ALJ is entitled to consider "the claimant's own complaints of symptoms," and, for that matter, "any other relevant information contained in the record" when assessing a claimant's credibility. *Rogers v. Comm'r of Soc. Sec'y*, 486 F.3d 234, 247 (6th Cir. 2007). Thus, it is perfectly acceptable for the ALJ to consider the consistency between what Plaintiff reported to her physicians and her testimony when assessing her credibility. Further, while it is true that Plaintiff did state that she is only unable to walk by herself to the restroom when she is on her menstrual cycle, she clearly wrote in her statement the following: "Watch TV after get my son off to school. I lay on the couch with my feet up I have to lay like that all the time on heat pad most time. I haven't slept in my bed in thirteen years." [Tr. 294]. The ALJ appropriately discounted Plaintiff's credibility to the extent that this statement is inconsistent with her reported daily activities during this time period. *See Walters*, 127 F.3d at 532 (citing *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986)) ("An ALJ

18

may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

Plaintiff argues that her statements about her daily activities are not *necessarily* inconsistent with her statements that she is in a great deal of pain, since she has always alleged that she has good and bad days. However, the mere fact that some medical evidence in the record "might" support an opposite conclusion is irrelevant, as it is the function of this Court to determine whether substantial evidence supported the ALJ's decision, not whether the case could have been decided differently. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)) (citations omitted) ("[W]e do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Instead, we consider the ALJ's decision determinative if there is 'such relevant evidence as a reasonable mind might accept' as sufficient to support the ALJ's conclusion.").

The ALJ also noted that some of her testimony was "the product of leading and suggestive questions from her representative, which indicates either a poor historian or an exaggeration in support of her claim." [Tr. 18].

19

Because the Federal Rules of Evidence do not apply during these hearings, Plaintiff argues that the ALJ should not have considered this in his determination of whether her testimony was credible. However, the Court does not find substantial error in this observation by the ALJ. The fact that Plaintiff was unable to remember several facts throughout questioning by both her attorney and the ALJ does indeed indicate that she is either a poor historian or that she is attempting to exaggerate her symptoms. The ALJ was not discrediting Plaintiff's testimony because she was being led by her counsel against the Federal Rules of Evidence, as counsel suggests; rather, he was inferring from the fact that Plaintiff was unable to remember several significant details until reminded by her counsel that Plaintiff's testimony was not entirely credible. This is an observation within his discretion.

In his opinion, the ALJ also noted that Plaintiff "testified that her pain can reach as high as 10 on a scale of 0-10 with 10 being the highest level. However, pain of that magnitude would require emergency inpatient hospitalization, and the file contains no such records." [Tr. 18]. The ALJ also concluded that there was "evidence of non-compliance with treatment recommendations" since she refused to be treated by medical school residents and

refused an offer of preventative medication for migraines. [Tr. 18]. Plaintiff argues that both of these comments were inappropriate. With regard to the pain scale, Plaintiff argues that because the pain scale is a "relative scale," rating yourself at a ten on such a scale may mean something differently entirely to two different people. [D.E. 17 at 19]. Thus, she argues that it is improper to "narrowly define the '10' on the pain scale as requiring immediate inpatient treatment." [D.E. 17 at 19]. As for the non-compliance with treatment recommendations, she argues that it is "entirely reasonable to worry about having students perform surgery on one's spine," and that while Plaintiff did not accept preventative medication for migraines, she accepted other migraine medications to deal with her pain. [D.E. 17 at 21—22]. Thus, Plaintiff argues that the ALJ should not discount Plaintiff's credibility for these actions.

Again, the Court notes that the issue of whether these facts could have been viewed differently is not an issue appropriately before this Court. *Bass*, 499 F.3d at 509. The only function of this Court is to assess whether or not the ALJ followed the appropriate legal framework when making his decision, and whether his decision is supported by substantial evidence. *Id.* ("If the ALJ's decision is

21

supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005))). Regardless, an ALJ is within his discretion to consider his belief as to whether Plaintiff's testimony is inconsistent with the medical record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Nevertheless, an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). While perhaps framed a little speculatively, the ALJ's determination that the medical record does not reflect that Plaintiff's pain was constantly rated at a ten on a zero to ten pain scale is a perfectly acceptable consideration.

Moreover, an ALJ is entitled to consider a claimant's refusal to engage in treatment options, particularly when the record indicates that this was not a determinative factor in his credibility assessment. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of

22

disabling pain." (citing *Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986))).  The Court finds no error.

Plaintiff also presents various complaints concerning other portions of the ALJ's decision.  For example, she argues that the ALJ erred when stating that Plaintiff worked after her alleged onset date, and contends that the ALJ improperly discounted Plaintiff's credibility for providing an unsupported claim that medical services for indigent persons are not available in her area.  The Court agrees that Plaintiff's medical record actually states that she was on a leave of absence from work at Bob Evans, and, thus, does not support a conclusion that she was working after her alleged onset date.  [Tr. 557].  The Court also agrees with Plaintiff that the ALJ should not have faulted Plaintiff for not submitting documentation to support her claim that she has no access to indigent medical services given his failure to offer her an opportunity to submit such documentation.  That being said, it is clear to the Court that these two conclusions by the ALJ did not form the foundational basis for his decision to discount Plaintiff's credibility.  The ALJ gave numerous explanations apart from these specific reasons as to why he discounted her credibility.  [Tr. 18—19].  Even accepting Plaintiff's arguments in this regard, substantial evidence

23

still supports the ALJ's decision.   Nothing more is required.

Therefore, because the objective evidence in this case did not establish that Plaintiff is disabled within the meaning of the Social Security Act, and because substantial evidence supports the ALJ's decision, the Commissioner's decision is affirmed.

**V. CONCLUSION**

**ACCORDINGLY, IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [D.E. 17] is **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [D.E. 18] is **GRANTED.**

This the 13th day of August, 2013.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge